**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| TYLER LORDAN DOZIER, individually and on behalf of all others similarly situated, | ) ) ) |
|      Plaintiffs, | ) )  Case No. 3:24-cv-00348 |
| v. | )  Judge Aleta A. Trauger ) |
| ALLIANCE GLOBAL SOLUTIONS, LLC AND AMR RESOURCES, LLC, D/B/A MULTIBAND GLOBAL, | ) ) ) ) |
|      Defendants. | ) ) |

## MEMORANDUM

Alliance Global Solutions, LLC ("AGS") and AMR Resources, LLC ("AMRR," and collectively, the "defendants") have filed a Motion to Dismiss Plaintiff's Complaint (Doc. No. 16), to which the plaintiff has filed a Response (Doc. No. 22), and the defendants have filed a Reply (Doc. No. 23). For the reasons set out herein, the motion will be granted in part and denied in part.

## I. BACKGROUND[1]

### A.  Nature of the Case

This case is a putative collective action brought under the Fair Labor Standards Act of 1938 ("FLSA"). (Doc. No. 1 ¶ 1.) The Complaint alleges that the defendants failed to pay overtime wages to certain employees who were compensated on an hourly basis, to whom the Complaint refers as "install techs." (*Id.* ¶¶ 1–2.) Specifically, the Complaint asserts that the defendants either "failed to record" all the hours worked by hourly paid install techs, or "'edited out' such hours

---

[1] Unless otherwise indicated, these facts come from the plaintiffs' Complaint (Doc. No. 1) and are taken as true for the purposes of the pending motion.

1

from its [*sic*] timekeeping system."[2] (*Id.* ¶ 20.) The Complaint also alleges that the defendants "deducted one-hour [*sic*] of pay of Plaintiff and those similarly situated for a meal break each shift" but that the plaintiff and those similarly situated "were not fully relieved from their work duties" during such breaks, which resulted in unrecorded and uncompensated work. (*Id.* ¶¶ 3, 21–23.) In addition to FLSA violations, the Complaint alleges that the defendants were contractually obligated to pay the plaintiff for 40 hours of work per week, regardless of hours actually worked, but that the defendants failed to do so with respect to the plaintiff's last two weeks of employment.[3] (*Id.* ¶¶ 4, 57–58.) In the alternative, the Complaint alleges that the plaintiff is entitled to compensation for unpaid work under an unjust enrichment theory. (*Id.* ¶¶ 59–62.)

## B. The Parties

Defendant AGS is a Delaware limited liability company whose principal place of business is in Nashville, Tennessee. (*Id.* ¶ 8.) AGS "delivers an end-to-end customer management solution for businesses that work on a small, medium, or large scale." (*Id.*) Defendant AMRR is a Delaware limited liability company whose principal place of business is in Marietta, Georgia. (*Id.* ¶ 9.) AMRR's business consists of "offer[ing] a solution for the IT and Network Lifestyle from development to decommissioning." The Complaint asserts that, "at all times relevant," the defendants were employers engaged in interstate commerce, were subject to the FLSA, and jointly "employed Plaintiff and those similarly situated and were responsible for establishing and administering common pay policies and practices related to them." (*Id.* ¶¶ 11, 13–16, 48–49.)

---

[2] The Complaint refers to "timekeeping system" in the singular. It also refers to the defendants by the singular possessive pronoun "its." (*Id.* ¶ 20.) This ambiguity makes it unclear how many systems are at issue and which entity owns them.

[3] The Complaint is silent on what amount the defendants allegedly failed to pay but seemingly implies that the plaintiff received at least partial payment. (*See.id.* ¶ 61 ("Defendants were aware it [*sic*] failed to pay Plaintiff *all* the money owed[.]" (emphasis added)).)

2

Plaintiff Tyler Jordan Dozier is an individual formerly employed by the defendants as an hourly paid install tech.[4] (Doc. No. 1 ¶¶ 1, 10.) The Complaint does not specify when the defendants employed the plaintiff other than "during the relevant period herein" or "during all times relevant to this Complaint." (*See id*. ¶¶ 10–11.) The Complaint also states that the plaintiff seeks to represent a group of similarly situated persons, which it defines as:

> All current and former non-exempt hourly-paid employees classified by Defendants as hourly-paid install techs and who were employed by Defendants anywhere in the United States at any time during the applicable limitations period covered by this Multi-Plaintiff Action Complaint (*i.e.* two years for FLSA violations and, three years for willful FLSA violations) up to and including the date of the final judgment in this matter, and who are Named Plaintiffs or elect to join this action pursuant to the FLSA, 29 U.S.C. § 216(b).

(Doc. No. 1 ¶ 7.)

## C. Procedural History

On March 3, 2024, the plaintiff filed his Complaint. (Doc. No. 1.) The Complaint contains two counts. Count I sets forth an FLSA claim for failure to pay overtime, on behalf of the plaintiff and those similarly situated. (*Id.* ¶¶ 47–55.) Count II sets forth a claim for breach of contract under Tennessee common law, apparently only on behalf on the plaintiff. (*Id.* ¶¶ 29, 56–58.) In the alternative, Count II states a claim for unjust enrichment. (*Id.* at 59–62.) On June 27, 2024, the defendants filed their Motion to Dismiss directed at all claims. (Doc. No. 17.) On July 11, 2024, the plaintiff filed a Response in opposition to the Motion to Dismiss. (Doc. No. 22.) On July 18, 2024, the defendants filed a Reply in support of their Motion to Dismiss. (Doc. No. 23.)

---

[4] Paragraph 10 of the Complaint refers to "Defendant" in the singular, which could indicate that only one of the defendants employed the plaintiff. (*See id.* ¶ 24.) Because the Complaint unequivocally states in other places that both defendants employed the plaintiff, the court will treat the use of the singular in paragraph 10 as a typographical error. (*See, e.g.*, *id.* ¶¶ 11-14.)

## II. LEGAL STANDARD

### A.  Rule 12(b)(6)

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that the plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

### B.  Rule 12(b)(1) [5]

---

[5] The defendants bring their Motion under Rules 12(b)(6) and 12(b)(2). The court examines subject matter jurisdiction under Rule 12(b)(1) *sua sponte*.

4

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Rule 12(b)(1) provides that the defendant may file a motion to dismiss based on a court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The plaintiff has the burden of proving jurisdiction when the defendant challenges subject-matter jurisdiction under Rule 12(b)(1). *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986).

Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack "questions merely the sufficiency of the pleading," and the court therefore takes the allegations of the complaint as true. *Wayside Church v. Van Buren Cnty.*, 847 F.3d 812, 816 (6th Cir. 2017) (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007); citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). The defendants argue that the plaintiff has failed to "plead the source of the Court's jurisdiction," which makes their argument a facial attack. (Doc. No. 17 at 15.)

## C. Rule 12(b)(2)

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes a defendant to file a motion to dismiss for lack of personal jurisdiction. Although the defendant is the moving party on such a motion, the plaintiff, as the party who invokes the court's jurisdiction, bears the burden of making a *prima facie* showing of personal jurisdiction. *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). Where, as here, neither party has requested an evidentiary hearing, the plaintiff's burden is "relatively slight." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017). "To defeat dismissal in this context, [the plaintiff] need make only a *prima facie* showing that personal jurisdiction exists." *Id.* To determine whether the plaintiff has made such a showing, the court considers the pleadings and any affidavits submitted by the parties in the light

5

most favorable to the plaintiff. Any conflicts between facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Dismissal under Rule 12(b)(2) is appropriate only if the specific facts alleged by the plaintiff, taken as a whole, fail to state a *prima facie* case for personal jurisdiction. *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003).

A defendant may be subject to either general jurisdiction or specific jurisdiction. General jurisdiction means that a court can hear any and all claims against a defendant. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). Only general jurisdiction is at issue here, as the plaintiff does not argue that the court has specific jurisdiction but rather contends that the court possesses general jurisdiction based upon AMRR's registration to conduct business in Tennessee. (*See* Doc. No. 22 at 14–18; Doc. No. 23 at 4.)

### III. ANALYSIS

**A. Unpaid Overtime in Violation of the FLSA (Count I)**

"The FLSA requires covered employers to pay employees overtime if they work more than forty hours in a week and to keep records of the hours that employees work." *Geeo v. Bonded Filter Co., LLC*, No. 3:22-CV-00359, 2022 WL 17408639, at *2 (M.D. Tenn. Dec. 2, 2022) (citing 29 U.S.C. §§ 207(a)(1), 211(c)). "FLSA complaints must contain factual allegations of a claim's *prima facie* elements. They must provide defendant with adequate notice. The *prima facie* elements of an FLSA overtime claim are: (1) that an employer-employee relationship existed; (2) that the employer or its employees engaged in interstate commerce; (3) that the employee worked more than forty hours in a workweek; and (4) that overtime was not paid." *Gibbs v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 2:21-CV-2153-SHM-CGC, 2022 WL 36688, at *2 (W.D. Tenn. Jan.

6

3, 2022) (internal citations omitted); *Roberts v. Corr. Corp. of Am.*, No. 3:14-CV-2009, 2015 WL 3905088, at *8 (M.D. Tenn. June 25, 2015).

The defendants argue that Count I of the Complaint contains two separate FLSA overtime claims: a "time shaving" claim and a "meal-break" claim. (Doc. No. 17 at 3 n.2.) The defendants further argue that both claims are deficient, yet for different reasons. (*Id.* at 5–9.) The court agrees that these claims warrant separate analyses. The defendants further argue that the Complaint does not plead sufficient facts to establish the willfulness of the alleged overtime violations. (*Id.* at 9.)

1. Time Shaving

As to the time-shaving claim, the defendants argue that "an FLSA plaintiff must supply some details about the specific weeks that he worked overtime, his work schedule during the timeframe covered by his allegations, or an approximation of the number of overtime hours worked" to provide the defendant with a fair notice of the claim. (Doc. No. 17 at 5.) In the same vein, the defendants point out that the plaintiff "does not identify a single instance where his timecard did not reflect the time he worked, or any instance where any timecard did not reflect the employee's efforts." (*Id.* at 7.) The plaintiff counters that such details are not required under Sixth Circuit law. (Doc. No. 22 at 5.) While noting that the allegations in the Complaint are sparse, the court must agree with the plaintiff.

Indeed, district courts in the Sixth Circuit have not typically imposed a heightened pleading standard for FLSA claims. *See Roberts*, 2015 WL 3905088 at *5-6. Rather, "courts within the Sixth Circuit have been clear that extensively detailed factual pleading is not required in the context of an FLSA claim, so long as a defendant is given sufficient notice of the ***prima facie*** claim that it is being asked to defend." *Id.* at *7 (emphasis added). To satisfy this relatively low bar, an FLSA plaintiff need not allege factual details about his or her work schedule, the specific weeks

7

during which the overtime occurred, or the number of overtime hours worked. *See id*. at *5-6 (collecting cases); *see also Gibbs*, 2022 WL 36688 at *3-5 (holding that courts in the Sixth Circuit do not require FLSA plaintiffs to identify a particular week during which overtime was not paid or to approximate the number of overtime hours); *Potts v. Nashville Limo & Transp.*, *LLC*, No. 3:14-CV-1412, 2014 WL 7180164, at *3 (M.D. Tenn. Dec. 16, 2014) ("In general, FLSA plaintiffs are not required to plead with specificity the exact number of hours for which they seek compensation, the exact amount in controversy, or the exact times and dates on which the violations allegedly occurred."); *Pope v. Walgreen Co.*, No. 3:14-CV-439, 2015 WL 471006, at *5 (E.D. Tenn. Feb. 4, 2015) ("To require the present plaintiffs to each specify in their complaint a particular week in which they worked more than 40 hours without overtime pay would, again, be rigidly harsh and inconsistent with *Iqbal* and *Twombly*."); *Miller v. AT & T Corp.*, No. 1:13-CV-01422, 2013 WL 5566698, at *2 (N.D. Ohio Oct. 9, 2013) (holding that allegations that the plaintiff "regularly worked more than 40 hours a week without compensation" provided the defendants with "sufficient notice of the allegations to form a response"); *Carter v. Jackson-Madison Cnty. Hosp. Dist.*, No. 1:10-CV-01155-JDB, 2011 WL 1256625, at *5-6 (W.D. Tenn. Mar. 31, 2011) (allegations that the employees had to work during uncompensated meal breaks, which resulted in denied overtime wages, sufficed to state an FLSA claim even in the absence of an allegation that the plaintiff worked in excess of 40 hours per week); *Noble v. Serco, Inc.*, No. CIV.A.3:08-76-DCR, 2009 WL 1811550, at *3 (E.D. Ky. June 25, 2009) (the plaintiff was not required to plead facts supporting the allegation that he worked in excess of 40 hours during certain weeks without receiving overtime pay because the employer bears the burden to maintain such records and FLSA plaintiffs generally need discovery to meet their burden); *Monroe v. FTS USA, LLC*, No. 2:08-CV-02100-BBD-DK, 2008 WL 2694894, at *3 (W.D. Tenn. July 9, 2008) (the plaintiffs were not

required to "allege what work they perform[ed], identify the weeks they allegedly worked overtime, [or] provide the number of hours they were underpaid").

Here, the Complaint sets forth the *prima facie* elements of an FLSA overtime claim. It states that an employer-employee relationship existed between the plaintiff and the defendants. (Doc. No. 1 ¶¶ 11, 13–14, 49.) It also states that the defendants and its employees engaged in interstate commerce. (*Id*. ¶¶ 15–16, 48.) The Complaint further states that the plaintiff worked over 40 hours per week.[6] (*Id*. ¶¶ 2, 19.) Finally, the Complaint alleges that the plaintiff was not compensated for overtime work. (*Id*. ¶¶ 19, 50–53.) Therefore, the Complaint provides the defendants sufficient notice of the plaintiff's claims.

The cases that the defendants cite do not support their position. In *Simpson v. Baskin*, No. 3:17-CV-01077, 2018 WL 1070897 (M.D. Tenn. Feb. 26, 2018), *report and recommendation adopted*, No. 3:17-CV-01077, 2018 WL 1288908 (M.D. Tenn. Mar. 13, 2018), Magistrate Judge Newbern found that the plaintiff's allegations were "too threadbare to state a claim" because the plaintiff's only allegations were that she had worked and was owed overtime, but the plaintiff provided no facts to support that conclusion. *See id.* at *8. Specifically, Judge Newbern noted, the plaintiff failed to allege that she worked over 40 hours per week. *See id*. But, as stated above, the Complaint here makes that allegation. In a case from another district, *Forrester v. American Security and Protection Service LLC & F. Michael Jones*, No. 5:20-CV-204 (TBR), 2021 WL 4134043 (W.D. Ky. Sept. 9, 2021), *aff'd sub nom. Forrester v. Am. Sec. & Prot. Serv. LLC*, No.

---

[6] The defendants rightfully point out the inconsistency in the Complaint, which states on one hand that the plaintiff worked more than 40 hours per week "during all times material to this lawsuit," and alleges on the other that the defendants failed to pay him the equivalent of 40 hours per week during his last two weeks of employment. (Doc. No. 17 at 5.) This argument does not change the court's analysis. Construing the Complaint in the light most favorable to the plaintiff, the court infers that the plaintiff either worked overtime during the last two weeks but was paid less than the equivalent of 40 hours of work, or that the overtime occurred only up until the last two weeks.

9

21-5870, 2022 WL 1514905 (6th Cir. May 13, 2022), the court found that a plaintiff failed to state an FLSA overtime claim because the complaint did not contain "any information about the specific weeks that she worked overtime, the length of her average workweek during the applicable period, or an approximation of the number of overtime hours worked." *Id.* at *3. While the Sixth Circuit affirmed the decision, it did so on other grounds, namely that the plaintiff failed to allege facts showing that the work for which she claimed overtime was compensable. *See id.* at *2–3. Therefore, the Sixth Circuit never reached the question of whether the plaintiff had pleaded sufficient facts to support the other aspects of her overtime claim, and, accordingly, did not have the occasion to articulate its own standard for pleading FLSA claims. *See id.* at *7–8 (White, J., concurring in part and dissenting in part) (addressing the other elements of the plaintiff's claim after finding that the plaintiff had sufficiently alleged that the work at issue was compensable, noting that the Sixth Circuit has not yet decided the appropriate standard for pleading an FLSA claim, opining that the appropriate standard would be a lenient one, and finding the allegations sufficient despite the absence of an approximation of overtime hours or the mention of a specific workweek, other than the mention that the overtime occurred "routinely"). Here, while the Complaint does not expressly allege that the overtime hours were compensable, it certainly implies so. The Complaint states that the defendants "failed to record" or "edited out" hours from the timekeeping system. (Doc. No. 1 ¶ 20.) Logic commands that, if the hours had to be recorded, those hours were compensable. In the same vein, if hours were "edited out," they had to have been recorded. The reasonable inference is that, absent error or fraud, recorded hours were compensable. *See Ashcroft*, 556 U.S. at 663 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) ("Dismissal of a complaint for the

10

failure to state a claim on which relief may be granted is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.").[7]

Whether the plaintiff can establish that he worked in excess of 40 hours during particular weeks without receiving the required overtime compensation may become an issue for summary judgment after the defendants produce their employment record in discovery, but the court will not dismiss the time-shaving claim under Rule 12(b)(6).

2. Meal Breaks

As to the meal-break claim, the defendants argue that the Complaint fails to show that the work allegedly performed during meal breaks was compensable. (Doc. No. 17 at 8.) In light of the Sixth Circuit's decision in *Forrester*, discussed above, the court agrees. *Forrester* stands for the proposition that "the FLSA doesn't require employers to pay for every minute employees are at work" and that, "to state a claim for relief, the complaint must allege facts that show [the work at issue] is compensable." *Forrester*, 2022 WL 1514905, at *1. In addition, "the Portal-to-Portal Act, which amended the FLSA, exempts (*i.e.*, makes noncompensable) work-related activities that are 'preliminary' or 'postliminary' to the 'principal activity or activities' which the employee is 'employed to perform.'" *Id.* (citing 29 U.S.C. § 254(a) and *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 32 (2014)).

In *Forrester*, the Sixth Circuit affirmed the dismissal of the plaintiff's claim because the complaint did not contain any non-conclusory allegations that could have allowed the district court

---

[7] The defendants also cite *Comer v. Directv, LLC*, No. 2:14-CV-1986, 2016 WL 853027, at *9 (S.D. Ohio Mar. 4, 2016), for the proposition that the Complaint should be more specific with respect to time periods. The cited portion, however, is a hypothetical and therefore dictum. As such, the court will not address this case.

11

to determine whether the work at issue was compensable—*i.e.*, whether it was a "principal activity" of the plaintiff's occupation or an "integral and indispensable part" thereof, or rather an activity that was merely pre-or-postliminary to a principal activity. *Forrester*, 2022 WL 1514905, at *2. This inquiry is especially important when the activity at issue is driving, insofar as the Portal-to-Portal Act provides that commuting to work is not compensable work time. *See* 29 C.F.R. § 785.35 ("Normal travel from home to work is not worktime."); *see also Sec'y of Lab. v. Timberline S., LLC,* 925 F.3d 838, 854–55 (6th Cir. 2019) (commuting to and from work cannot be subject to overtime requirements, even when the employer pays for such time); *Geeo*, 2022 WL 17408639, at *2 ("it is well established under the Portal-to-Portal Act of 1947, which amended the FLSA, both that (1) time spent 'traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform' is generally not to be counted as compensable work time under the FLSA and that (2) 'activities which are preliminary to or postliminary to said principal activity or activities' are not compensable") (quoting 29 U.S.C. § 254(a)).

Here, as in *Forrester*, the Complaint contains no indication of what the plaintiff's work-related activities were; nor does the Complaint explain what "job duties" the plaintiff was "not fully relieved of" during the unpaid breaks. The Complaint merely alleges that plaintiff "typically had less than 20 minutes per shift in which to grab and eat a sandwich while continuing to drive to another customer." (Doc. No. 1 ¶¶ 22–23.) The Complaint is equally silent on whether and why time spent "driv[ing] to another customer" was compensable.[8] *Cf. Carter v. Jackson-Madison Cnty. Hosp. Dist.*, No. 1:10-CV-01155-JDB, 2011 WL 1256625, at *4 (W.D. Tenn. Mar. 31, 2011)

---

[8] The allegations in the Complaint are insufficient for the court to infer, for instance, that the driving at issue was from one work location to another, or if it rather originated at the plaintiff's home or a restaurant.

(the plaintiff sufficiently stated an FLSA claim by stating that the employer automatically deducted 30-minute meal periods from the plaintiff's pay where the complaint explained the nature of the work performed and why it was compensable); *see also Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 46 (1st Cir. 2013) (the plaintiff sufficiently alleged that the work performed during meal breaks was compensable because "essentially indistinguishable from work performed during the employees' regularly scheduled hours"). In the absence of such allegations, the meal-break claim fails.[9] The court will therefore dismiss this claim, although without prejudice.

### 3. Willful Conduct

Next, the defendants argue that the Complaint does not sufficiently plead that the defendants "willfully" violated the FLSA. (Doc. No. 17 at 9–10.) In response, the plaintiff argues that the Complaint's allegations are sufficient for the court to "reasonably infer that the Defendants violated the FLSA and breached their agreement with the Plaintiff willfully." (Doc. No. 22 at 4.) The court agrees with the plaintiff.

"Under the FLSA, a lawsuit to recover unpaid compensation must 'be commenced within two years after the cause of action accrued,' unless the cause of action arose 'out of a willful violation,' in which case the lawsuit must 'be commenced within three years after the cause of action accrued.'" *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008) (quoting 29 U.S.C.A. § 255(a)). For the three-year statute of limitations to apply, an FLSA complaint must contain a plausible claim that the alleged violation was willful. *Gibbs*, 2022 WL 36688, at *5 (citing *Doucette v. DIRECTV, Inc.*, No. 2:14-CV-02800, 2015 WL 2373271, at *5 (W.D. Tenn. May 18, 2015)). "A violation of the FLSA was willful if an employer 'either knew or

---

[9] The defendants also argue that the Complaint fails to plead that the defendants' meal-break policy caused the plaintiff to work overtime. (Doc. No. 17 at 9; Doc. No. 23 at 3.) Because the court finds this claim fails on other grounds, it need not examine this argument.

showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Id.* (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "[A]lthough conditions of a person's mind may be alleged generally, the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation plausible on its face." *Katoula v. Detroit Ent.*, 557 F. App'x 496, 498 (6th Cir. 2014) (internal quotations omitted) (quoting *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012)).

"The Sixth Circuit has decided that an employer's recordkeeping practices may 'corroborate an employee's claims that an employer acted willfully in failing to compensate for overtime.'" *Gibbs*, 2022 WL 36688, at *5 (citing *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 844 (6th Cir. 2002)). "At the motion-to-dismiss stage, allegations that the employer failed to keep accurate records can satisfy the plausibility requirement." *Id.* (citing *Dowd v. Directv, LLC*, No. 14-CV-14018, 2016 WL 28866, at *6 (E.D. Mich. Jan. 4, 2016), *Larson v. Rush Fitness Corp.*, No. 3:12-CV-109, 2013 WL 11328590, at *1 (E.D. Tenn. Dec. 10, 2013), and *Monroe*, 2008 WL 2694894, at *3). The Complaint here alleges that the defendants "either failed to record all their [employees'] hours, including overtime hours, in to [*sic*] its timekeeping system or 'edited out' such hours from its time keeping system during all times material." (Doc. No. 1 ¶ 20.) Therefore, the Complaint contains sufficient allegations to meet the pleading requirements.

## B. Collective Allegations

The defendants request that the court strike the collective allegations in the Complaint as speculative pursuant to 29 U.S.C. section 216(b) and/or Federal Rule of Civil Procedure 12(f). (Doc. No. 17 at 10.) In support of their argument, the defendants cite *Shoemo-Flint v. Cedar Fair, L.P.*, No. 3:22-CV-1113, 2023 WL 4235541, at *3 (N.D. Ohio June 28, 2023). There, the court found that the complaint's lack of detail with respect to the dates of the plaintiff's employment

14

with the defendant did not allow for a "reasonable inference that Plaintiff and the other members of the proposed collective suffer[ed] from a single, FLSA-violating policy, and, on this basis, struck the collective-action allegations. *Id.* at *3 (quotation marks omitted). The court noted that the defendant had previously sought additional information regarding the plaintiff's knowledge that other employees were similarly situated but that the plaintiff "did not allege any additional facts about the period of her employment or what knowledge she may have that could plausibly establish all other servers employed by Defendant during the relevant three-year period were subject to the same alleged violations of the FLSA[.]" On this basis, the court rejected the plaintiff's argument that it should have permitted discovery to allow the plaintiff to plead such facts. *Id.*[10]

This court has previously noted that the standard for determining whether a complaint sufficiently pleads a collective-action claims is that of Rule 8. *See Hammond v. Floor & Decor Outlets of Am., Inc.*, No. 3:19-CV-01099, 2020 WL 2473717, at *10 (M.D. Tenn. May 13, 2020) (Trauger, J.) (collecting cases). The court also rejected the argument that "a plaintiff bringing collective action claims on behalf of himself and other similarly situated employees 'must indicate who those other employees are and allege facts that would entitle those other employees to relief.'" *Id.* (citing *Roberts*, 2015 WL 3905088, at *8). In other words, "the FLSA's text expressly provides

---

[10] Underlying the Northern District of Ohio's decision in *Shoemo-Flint* is the recent Sixth Circuit decision in *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1007 (6th Cir. 2023). There, the Sixth Circuit reviewed a district court's decision of whether to facilitate notice in a collective-action FLSA suit. *See id.* at 1008. The court reasoned that such "court-approved notice of the suit should be sent only to employees who are in fact similarly situated." *Id.* at 1010. And the appropriate standard for determining whether employees are similarly situated to the plaintiff in an FLSA collective action, the court held, is "strong likelihood." *Id.* at 1011. The Sixth Circuit defined that standard as requiring "a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id. Clark* is not a case about a motion to strike or a motion dismiss; nor does it establish a new standard for determining whether collective-action allegations are sufficient at the pleadings stage.

for complaints with allegations lacking additional factual detail as to the identity of other similarly situated employees at the pleading stage." *Id.* (citing *Roberts*, 2015 WL 3905088, at *8). In *Hammond*, the court concluded:

> In this case, besides alleging facts to support his own FLSA claim with sufficient detail, the plaintiff asserts that other similarly situated F&C Hourly Workers were scheduled to and did work hours similar to his—that is, more than forty per week—and that the defendant did not compensate them at the statutorily required rate. He alleges that F&D managers regularly "shaved time" off of Hourly Workers' recorded hours in order to avoid paying the amount of overtime due. At this juncture, these allegations are sufficient, and the motion to dismiss (or strike) in their entirety the claims on behalf of the collective will be denied.

*Id.* (citations omitted). Here, the allegations are equivalent to those in *Hammond*. The Complaint alleges that the plaintiff and those similarly situated are or were "non-exempt hourly-paid employees classified by Defendants as hourly-paid install techs." (Doc. 1 ¶ 7.) The Complaint further alleges that the plaintiff and those similarly situated "worked more than [40] hours per week within weekly pay periods for Defendants without being paid one and one-half times their regularly hourly rates[.]" (*Id.* ¶ 19.) The defendants "either failed to record all their hours . . . or 'edited out' such hours[.]" (*Id.* ¶ 20.) Furthermore, the Complaint alleges that the plaintiff and those similarly situated "have worked for Defendants during all times material and were subject to the same operational, compensation, and time keeping policies and practices, including not being paid for all their compensable time at the applicable FLSA overtime compensation rates of pay[.]" (*Id.* ¶ 40.)

One additional element that tips the scale in the plaintiff's favor is his argument that the facts are distinguishable from those in *Shoemo-Flint*, given that the present litigation is still in its early stages. (Doc. No. 22 at 13–14.) In support of this argument, the plaintiff cites *Berner v. PharMerica Logistics Servs., LLC*, 703 F. Supp. 3d 802 (W.D. Ky. 2023). There, the court found a motion to strike based upon the argument that the case was "doomed to fail at the notice stage" to

16

be premature. *Id.* at 811. The court also distinguished *Shoemo-Flint* on the basis that, in the latter case, "after one-year [*sic*] of litigation and the filing of an amended complaint, the plaintiff still failed to identify 'when she began working,' 'how long she worked,' and 'whether she still works' for the defendant." *Id.* The court is persuaded by *Berner*'s rationale and finds that it would be premature to dismiss all collective allegations at this early stage of litigation, before the parties are able to conduct any discovery on the issue. Therefore, the court will not strike the collective allegations at this juncture.

## C. Personal Jurisdiction

The defendants argue that the court "lacks personal jurisdiction over the claims of putative collective action members arising from conduct involving AMRR occurring outside of Tennessee." (Doc. No. 17 at 11–14.) The plaintiff does not oppose the defendants' argument that the court lacks specific jurisdiction; nor does he contend that AMRR is incorporated or headquartered in Tennessee. Rather, the plaintiff argues that AMRR is subject to the court's general jurisdiction because it is registered to conduct business in Tennessee. (Doc. No. 22 at 14–18.) Therefore, the narrow question for the court is whether it has general jurisdiction over AMRR based upon its registration.

To support his argument, the plaintiff primarily relies on *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122 (2023). In *Mallory*, the Supreme Court had to decide "whether the Due Process Clause of the Fourteenth Amendment prohibits a State from requiring an out-of-state corporation to consent to personal jurisdiction to do business there." *Id.* at 127. At the core of the underlying fact pattern was a Pennsylvania statute that requires out-of-state corporations to register with the state and consent to general jurisdiction. *Id.* at 134. The Supreme Court described the statutory scheme as follows:

[T]he Pennsylvania law at issue here provides that an out-of-state corporation "may not do business in this Commonwealth until it registers with" the Department of State. 15 Pa. Cons. Stat. § 411(a). As part of the registration process, a corporation must identify an 'office' it will "continuously maintain" in the Commonwealth. § 411(f); *see also* § 412(a)(5). Upon completing these requirements, the corporation "shall enjoy the same rights and privileges as a domestic entity and shall be subject to the same liabilities, restrictions, duties and penalties . . . imposed on domestic entities." § 402(d). Among other things, Pennsylvania law is explicit that "qualification as a foreign corporation" shall permit state courts to "exercise general personal jurisdiction" over a registered foreign corporation, just as they can over domestic corporations. 42 Pa. Cons. Stat. § 5301(a)(2)(i).

*Id.* at 134. The Court ultimately held that "personal jurisdiction is a *personal* defense that may be waived or forfeited" and that the defendant corporation had done just that by completing the registration process in the Keystone State, thereby consenting to general jurisdiction. *Id.* 144–46 (emphasis in original). However, the Court did not contemplate what the result would have been, had the statute been worded differently. *See id.* at 135 ("To decide this case, we need not speculate whether any other statutory scheme and set of facts would suffice to establish consent to suit.").

The question in our case, therefore, is whether the defendants have consented to general jurisdiction in Tennessee. The Tennessee Supreme Court has not yet ruled on whether Tennessee law subjects registered foreign corporations to general jurisdiction. *See Baskin v. Pierce & Allred Constr., Inc.*, 676 S.W.3d 554, 568 n.14 (Tenn. 2023) (acknowledging the issue but declining to address it because the plaintiff did not argue that the defendant was subject to general jurisdiction). Ordinarily, the court would make an Erie guess as to how the Tennessee Supreme Court would decide the issue.[11] Here, however, the absence of such decision is dispositive in and of itself.

_____

[11] An "Erie guess" is "an informed prediction as to how the state's court of last resort, 'if presented with the issue, would resolve it.'" *Generation Changers Church v. Church Mut. Ins. Co.*, 693 F. Supp. 3d 795, 808 (M.D. Tenn. 2023) (quoting *In re Fair Fin. Co.*, 834 F.3d 651, 671 (6th Cir. 2016) (quoting *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358 (6th Cir. 2013))).

18

As the plaintiff points out, Tennessee requires foreign corporations that do business in the state to register with the Secretary of State. Tenn. Code Ann. § 48-25-101. Similarly to the Pennsylvania statute at issue in *Mallory*, Tennessee law requires that the foreign corporation continuously maintain an office in the state. *See id.* § 48-25-107. It also provides that:

> A foreign corporation with a valid certificate of authority has the same but no greater rights and has the same but no greater privileges as, and except as otherwise provided by chapters 11-27 of this title, is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character.

*Id*. § 48-25-105. The plaintiff argues that "'[t]hose same rights' include the ability to sue or be sued in Tennessee." (Doc. No. 22 at 16.) In further support of this argument, Plaintiff cites a separate statute that provides that a corporation has the same powers as an individual, including the power to "[s]ue and be sued, complain and defend in its corporate name." Tenn. Code Ann. § 48-13-102.

The defendants, on the other hand, rely on *Pritchard v. Thompson*, No. 22-CV-2838-JPM-TMP, 2023 WL 5817658, at *6 (W.D. Tenn. Aug. 3, 2023), *report and recommendation adopted*, No. 222CV02838JPMTMP, 2023 WL 5746922 (W.D. Tenn. Sept. 6, 2023). In *Pritchard*, a sister district examined head-on whether, in light of *Mallory*, a corporation consents to general jurisdiction by complying with Tennessee's registration statute. *See id.* *5-6. The magistrate judge concluded that:

> *Mallory* is not conclusive on the question of whether the Federal Circuit permits this court to exercise personal jurisdiction over [the defendant]. Unlike the Pennsylvania registration statute, Tennessee's analogous law contains no language expressly affirming the corporation' consent to general jurisdiction. *See* Tenn. Code Ann. §§ 48-25-101(a), 107 (2002). Thus, the issue of whether a corporation consents to jurisdiction by complying with this statute remains open to debate.

> Given the lack of explicit language in the Tennessee statute stating that registration of a foreign corporation constitutes consent to the exercise [of] general personal jurisdiction, the undersigned finds that this case is distinguishable from *Mallory*. Unlike a corporation registering to do business in Pennsylvania, Harman did not expressly consent to the general personal jurisdiction of Tennessee merely by complying with Tennessee's statute. Because there has been no consent, the

19

> *International Shoe* framework applies. *Mallory*, 2023 WL 4187749, at *8. Under
> *International Shoe*, a court sitting in Tennessee may exercise general personal
> jurisdiction over a corporation that is incorporated or headquartered there. Harman is
> incorporated in Delaware and headquartered in California, and thus does not meet
> either of these requirements. For that reason, the undersigned finds that this court lacks
> personal jurisdiction over [the defendant]. It is therefore recommended that all claims
> against [the defendant] be dismissed.

*Id.* at *9 (some internal citations omitted). The Northern District of Ohio came to a similar

conclusion with regard to Ohio law in *Union Home Mortgage Corp. v. Everett Financial, Inc.*, No.

1:23 CV 00996, 2023 WL 6465171 (N.D. Ohio Oct. 4, 2023), opining that "[t]he key operative

fact of the *Mallory* decision was that the Pennsylvania statute at issue acted as an *explicit* consent

to general jurisdiction as part of the 'registration to do business' process, whereas the corollary

Ohio statutes contain no such consent provision." *Id.* at *3 n.6 (emphasis in original).

Most jurisdictions outside of the Sixth Circuit agree that express consent is required. *See,

e.g.*, *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 137 (4th Cir. 2020) ("Under the rules set out in

*Pennsylvania Fire* and *Robert Mitchell Furniture*, obtaining the necessary certification to conduct

business in a given state amounts to consent to general jurisdiction in that state only if that

condition is explicit in the statute or the state courts have interpreted the statute as imposing that

condition. [The statute] states that a foreign corporation doing business in South Carolina under a

certificate of authority 'is subject to the same duties, restrictions, penalties, and liabilities' as a

domestic corporation. Because domestic corporations are subject to general jurisdiction in South

Carolina, the Plaintiffs contend that under [the statute], foreign corporations operating under a

certificate of authority are likewise subject to general jurisdiction in South Carolina. We do not

agree with the plaintiffs' reading of South Carolina law."); *Waite v. All Acquisition Corp.*, 901 F.3d

1307, 1321 (11th Cir. 2018) ("In the [plaintiffs]' view, by imposing 'the same duties, restrictions,

penalties, and liabilities' on registered foreign corporations, Florida law indicates that a foreign

corporation consents to general jurisdiction in Florida when it registers to do business there. But the text of [the statute] simply does not say that—and, from our review, it does not appear that any Florida court has ever ascribed such a meaning to [the statute]. The [plaintiffs] thus have failed to convince us[.]"); *Gulf Coast Bank & Tr. Co. v. Designed Conveyor Sys.*, L.L.C., 717 F. App'x 394, 397 (5th Cir. 2017); *accord Cooper Tire & Rubber Co. v. McCall*, 863 S.E.2d 81, 90 (2021) (noting that, while the statute at issue does not expressly state that registration amounts to consent to general jurisdiction, a prior state supreme court decision provides such notification to registrants).

As the Fourth Circuit points out in *Fidrych*, the governing rule is that of *Robert Mitchell Furniture Co. v. Selden Breck Construction Co.*, 257 U.S. 213 (1921). There, the Supreme Court held that a foreign corporation could not be sued in Ohio based on a contract entered into and for work to be performed out of state, regardless of the fact that the corporation had appointed an agent in the state pursuant to a statutory requirement. *See id.* at 214–15. The statutory scheme at issue, the Supreme Court noted, only provided for "liability incurred within the state." *Id.* at 216 (quotation marks omitted). The Court warned, however, that, "when a foreign corporation appoints [an agent] as required by statute it takes the risk of the construction that will be put upon the statute and the scope of the agency by the State Court." *Id.* at 215–16. But the Court knew of "no decision to the contrary by the Supreme Court of Ohio." *Id.* As such, the Court concluded that, "[u]nless the state law either expressly or by local construction gives to the appointment a larger scope, we should not construe it to extend to suits in respect of business transacted by the foreign corporation elsewhere." *Id.* Based upon this rule, a registration statute may subject a corporation to general jurisdiction if the statute either (1) expressly states so, or (2) state courts have construed it as having that effect.

No such construction exists here. The plaintiff cites *Brown v. Steak N Shake, Inc.*, 1:21-CV-4474-SEG, Doc. No. 87 (N.D. Ga. Jun. 7, 2024). (*See* Doc. No. 22 at 17.) In *Brown*, the court reconsidered its prior ruling in light of *Mallory* and found that it had general jurisdiction over the claims of out-of-state FLSA plaintiffs and collective-action members based upon a registration statute that had been interpreted by the state supreme court as conferring general jurisdiction. *See id.* at 2 n.1. *Brown* is distinguishable from our case, however, because the Tennessee Supreme Court has not yet decided the issue. [12, 13]

There remains the question of whether Tennessee's registration statute itself is sufficiently express. "General jurisdiction means that a court can hear any and all claims against a defendant." *Ramsbottom v. Ashton*, No. 3:21-CV-00272, 2022 WL 106733, at *15 (M.D. Tenn. Jan. 11, 2022). While Tennessee's statutory scheme does not expressly mention the term "general jurisdiction," the statutory provisions that the plaintiff cites, read together, may lead to the inference that a foreign corporation that registers to do business in Tennessee also consents to general jurisdiction. Indeed, Tenn. Code Ann. § 48-25-105, which is titled "[d]omestication of foreign corporations," provides that a registered foreign corporation has the same "rights," "privileges," "duties, restrictions, penalties, and liabilities" as a domestic corporation. Section 48-13-102 provides that Tennessee corporations can "[s]ue and be sued" in the state. *Pritchard* does not mention this

---

[12] Without expressing an opinion on the matter, the court notes a striking similarity between Tennessee's registration statute and Georgia Code § 14-2-1505, which "statutory effect" the Supreme Court of Georgia described as "consistent" with the exercise of general jurisdiction. *See Allstate Ins. Co. v. Klein*, 262 Ga. 599, 601 n.2 (1992).

[13] There is also federal caselaw supporting the notion that a foreign registered corporation remains foreign for jurisdictional purposes. In *Doten v. Halby*, 252 F. Supp. 830, 831–32 (E.D. Tenn. 1965), for instance, the court found that a defendant could not invoke the predecessor of section 48-25-105 for purposes of defeating diversity citizenship. Although *Doten* is distinguishable in many aspects, it supports the idea that courts have not construed § 48-25-105 as fully domesticating foreign corporations.

22

language. In *Brown*, the court referred to similar language to support its finding that the plaintiff had made a *prima facie* of personal jurisdiction.

> Since *Mallory v. Norfolk Southern Railway Company* recognized consent as an independent and still-valid basis for corporate personal jurisdiction, 600 U.S. at 146, the question before the Court on Plaintiff's motion to reconsider was what Defendant had consented to by registering to do business in Georgia. The answer to that question was dependent on the relevant state statute and judicial constructions thereof. In Georgia, the relevant statute, O.C.G.A. § 9-10-91, has been authoritatively construed for over 30 years to mean that foreign corporations authorized to do business in Georgia '*may sue or be sued to the same extent as a domestic corporation.*' *Allstate Ins. Co. v. Klein*, 422 S.E.2d 863, 865 (Ga. 1992); *see also Cooper Tire & Rubber Co. v. McCall*, 863 S.E.2d 81, 83 (Ga. 2021) ("In *Klein*, we held that Georgia courts may exercise general personal jurisdiction over any out-of-state corporation that is authorized to do or transact business in this state at the time a claim or cause of action arises.").

*Brown*, 1:21-CV-4474-SEG, n.1 (internal quotations omitted) (emphasis added).

However, nowhere in the statutory provisions to which the plaintiff refers does the Tennessee legislature provide that a foreign corporation has the right to sue or be sued "to the same extent as a domestic corporation"; nor do those provisions contain equivalent language. Another weakness in the plaintiff's theory is that Tenn. Code Ann. § 48-13-102 provides that a corporation has the "power" to "[s]ue and be sued." The term "power" appears nowhere in § 48-25-105, which only mentions "rights," "privileges," "duties, restrictions, penalties, and liabilities." This further muddies the waters. Finally, § 48-25-105 could reasonably be interpreted as merely definitional, insofar as it explains what a corporation is. *See* Tenn. Code Ann. § 48-13-102 ("[E]very corporation has perpetual duration and succession in its corporate name and has the same powers as an individual to do all things necessary or convenient to carry out its business and affairs . . . ."). In sum, even if it were clear that § 48-25-105 applies to registered foreign corporations, the statute would still fall short of *expressly* conferring general jurisdiction in Tennessee over those corporations. And that is the last nail in the coffin of the plaintiff's jurisdictional argument.

23

As our sister district stated in *Pritchard*, "the issue of whether a corporation consents to jurisdiction by complying with this statute remains open to debate." *Pritchard*, 2023 WL 5817658, at *9. But the applicable standard requires expressness or construction by state courts. The court finds that Tennessee's registration statute contains no express language affirming consent to general jurisdiction, and the Tennessee Supreme Court has not yet addressed the issue. Therefore, the court finds that the current state of the law does not support the plaintiff's jurisdictional argument. Consequently, the court will grant the 12(b)(2) motion and dismiss the out-of-state claims against AMRR. Nonetheless, the court will do so without prejudice so that the plaintiff and those similarly situated are not precluded from refiling the claim, should the Tennessee Supreme Court decide the issue in their favor.

**D.  Breach of Contract (Count II)**

The defendants argue that the court should dismiss the breach of contract and unjust enrichment claims for three reasons. First, the defendants argue, the Complaint fails to allege a jurisdictional basis for the claims. (Doc. No. 17 at 15.) Second, the defendants argue that the Complaint fails to state a breach of contract, insofar as it fails to allege sufficiently definite terms. (*Id.* at 15–16.)  Third, the defendants contend that the Complaint fails to state an unjust enrichment claim because it does not allege that the plaintiff conferred a benefit upon the defendants. (*Id.* at 16–17.) The court will address these arguments *seriatim*.

1.  Subject Matter Jurisdiction

In their Motion, the defendants argue that the Complaint fails to allege a jurisdictional basis for the breach of contract claim. (Doc. No. 17 at 15; *see also* Doc. No. 23 at 5.) In his Response, the plaintiff counters that the defendants do not bring their Motion under Rule 12(b)(1), implying that the court should disregard the defendants' argument. (Doc. No. 22 at 18.)

24

"[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009); *Mangrum v. Charlton*, No. 3:15-CV-0692, 2015 WL 4603287, at *4 (M.D. Tenn. July 29, 2015) ("This court is charged with the duty of assessing its own jurisdiction and must *sua sponte* dismiss a case in which subject matter jurisdiction is lacking[.]"); *Nollner v. S. Baptist Convention, Inc.*, 852 F. Supp. 2d 986, 998 (M.D. Tenn. 2012) ("When it appears that the court may not have jurisdiction over the claims presented, the court may consider the issue *sua sponte*.")

In at least one case, the Sixth Circuit affirmed a *sua sponte* dismissal because the plaintiff "has failed to invoke the subject matter jurisdiction of the district court." *See Keeran v. Off. of Pers. Mgmt.*, 827 F.2d 770 (6th Cir. 1987); *accord Lackey v. Callahan*, No. CIV.A. C-2-06-565, 2006 WL 2583294, at *1 (S.D. Ohio Sept. 6, 2006) (Dismissing the complaint on the basis that, "[u]nder rule 8(a) of the Federal Rules of Civil Procedure, a pleading must contain 'a short and plain statement of the grounds upon which the court's jurisdiction depends.' Absent such a statement, the court has no way of knowing whether or not it would be proper for it to hear the case."). Courts have nonetheless refused to dismiss a complaint when amending the pleadings to include such statement would merely be *pro forma* because the basis of subject matter jurisdiction was obvious. *See, e.g.*, *Matter of Century Ent. Corp.*, 21 B.R. 160, 162 (Bankr. S.D. Ohio 1982) (a statement of jurisdictional grounds "may be deemed permissive within the discretion of the Court if the Court concludes that amending the pleadings to include such statement would merely serve to satisfy a technical pleading requirement, and not assist in resolution of a matter of bona fide contention."); *accord Brown v. Moore*, No. CIV.A. 206CV00495, 2006 WL 2583296, at *1 (S.D. Ohio Sept. 7, 2006) ("[T]he Complaint fails to explicitly allege a basis for this Court to

25

exercise subject matter jurisdiction as required by Rule 8(a), Fed.R.Civ.P. *Further, no basis for federal subject matter jurisdiction implicitly appears on the face of the complaint.*") (emphasis added); *Hix v. Hinn*, No. 10-CV-12393, 2010 WL 2630044, at *1 (E.D. Mich. June 28, 2010) ("[The] complaint contains no jurisdictional statement required by Rule 8*, and jurisdiction is not otherwise apparent from review of the entire complaint.*") (emphasis added). As the Sixth Circuit put it, "if a complaint violates Rule 8, the appropriate remedy is rarely immediate dismissal." *Kensu v. Corizon, Inc.*, 5 F.4th 646, 652 (6th Cir. 2021).

The defendants are correct that the Complaint should contain a mention of 28 U.S.C § 1367(a) as the basis for the court's jurisdiction over the breach of contract and unjust enrichment claims. *See* Fed. R. Civ. Proc. 8(a). Nonetheless, the court finds it apparent on the face of the Complaint that the plaintiff meant to invoke the court's supplemental jurisdiction over those claims. The court also finds that requiring the plaintiff to amend the Complaint for the sole purpose of adding a mention of section 1367(a) would be unnecessarily *pro forma*. Therefore, the court will not dismiss this claim for lack of jurisdiction.

2.  Failure to State a Claim[14]

The defendants next argue that the Complaint fails to allege sufficient facts to support claims for breach of contract and unjust enrichment. (Doc. No. 17 at 15–17.) The plaintiff does not address the defendants' argument in his Reply. (*See generally* Doc. No. 22.)

"Under Tennessee law, a plaintiff bringing a breach of contract claim 'must prove [1] the existence of a valid and enforceable contract, [2] a deficiency in the performance amounting to a

---

[14] The Complaint refers to this claim as "breach of contract class claim." (*See* Doc. No. 1 at ¶¶ 28, 57.) The Complaint also states that the contract between the parties required the defendants to pay "those similarly situated" for 40 hours per week. (*See* Doc. No. 1 at ¶¶ 28, 57.) Nonetheless, Count II clearly states an individual claim by the plaintiff, not a collective claim or class action.

breach, and [3] damages caused by the breach.'" *Melville Cap., LLC v. Tennessee Com. Bank*, No. 3:11-CV-00888, 2011 WL 6888476, at *4 (M.D. Tenn. Dec. 29, 2011) (citing *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011)).

Here, the Complaint alleges that the plaintiff and both defendants entered into an agreement pursuant to which the plaintiff was guaranteed to be paid for 40 hours of work, regardless of how many hours he actually worked. (Doc. No. 1 ¶ 57 (referring to the defendants in the plural).) The Complaint also alleges that the defendants did not pay the plaintiff for 40 hours of work during his last two weeks of employment. (*Id.* at 58.) Although these allegations are thin, they allege the existence of a contract between the parties and the breach of a specific duty by the defendants. The court can also reasonably infer from these allegations that the resulting damages to the plaintiff are monetary, *i.e.*, the difference between the wages paid and the wages owed. *See Moore*, 2013 WL 915555, at *5 ("[W]hen an employment contract is breached, 'the proper measure of damages is the salary that would have been earned had the contract not been breached, less any amount the employee earned or should have earned in the exercise of reasonable diligence in some other employment during the unexpired contract term.'") (citing *Cantrell v. Knox Cnty. Bd. of Educ.*, 53 S.W.3d 659, 662 (Tenn. 2001)). Construed most favorably to the plaintiff, these scanty allegations suffice to state a claim for breach of contract at this juncture.

The defendants also argue that the plaintiff's unjust enrichment claim is deficient. The defendants raise two arguments in support of this contention. First, they argue that the Complaint fails to articulate a benefit conferred upon the defendants. Second, they argue that a claim for unjust enrichment requires that there be no contract and that the plaintiff cannot, in good faith, plead in the alternative. (Doc. No. 17 at 16–17.) The court agrees.

"The elements of an unjust enrichment claim are: '1) [a] benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Hamm v. Wyndham Resort Dev. Corp.*, No. 3:19-CV-00426, 2019 WL 6273247, at *8 (M.D. Tenn. Nov. 25, 2019) (citing *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998)). "Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist. 'Courts will impose a contractual obligation under an unjust enrichment theory when: (1) there is no contract between the parties or a contract has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation. [citation] A contract cannot be implied, however, where a valid contract exists on the same subject matter.'" *Id.* (citing *Whitehaven Cmty. Baptist Church*, 973 S.W.2d at 596, and *Smith v. Hi-Speed, Inc.*, 536 S.W.3d 458, 480 (Tenn. Ct. App. 2016)).

Based upon the language in the Complaint, the court infers two possible benefits to the defendants: work performed by the plaintiff and unpaid monies. (Doc. No. 1 ¶¶ 59–62.) The Complaint alleges that the parties entered into a contract, the terms of which required the defendants to pay the plaintiff for 40 hours per week, regardless of how many hours he actually worked. (*Id.* ¶¶ 57–58.) The Complaint then alleges that the "[d]efendants breached said contract by failing to pay [the plaintiff] for 40 hours of pay [*sic*] each week of his last two weeks of employment." (*Id.* ¶ 58.) What the Complaint does not allege is whether the plaintiff performed any work at all during those two weeks. On one hand, if the plaintiff performed no work, then he conferred no tangible benefit upon the defendants. Even assuming, *arguendo*, that the benefit at issue could be the money the defendants did not pay the plaintiffs during those two weeks, that

would impermissibly premise the unjust enrichment claim upon the existence of a contract between the parties, without which the defendants would never have been under the obligation to pay the defendant for hours not worked. (*See id.* ¶ 62 ("Defendants were aware it [*sic*] failed to pay Plaintiff all the money owed him under the said contract.").) On the other hand, if the plaintiff performed some work for the defendants during those two weeks, the Complaint does not simply say so. (*See id.* ¶¶ 28–29, 58–61). The Complaint merely alleges that the plaintiff "provided valuable services to Defendants" and subsequently refers to those "services" as "work." (*Id.* ¶¶ 59–61.) These allegations are conclusory and leave the court guessing what "work" the plaintiff performed and when. The Complaint also fails to allege how this "work" benefitted the defendants, other than premising such benefit upon the existence of a contract. (*See id.* ¶ 60.) The allegation that the defendants "accepted Plaintiff's services and had reasonable notice that Plaintiff expected to be compensated" is equally conclusory and a mere recitation of the law, and therefore fares no better. Thus, the court will dismiss the unjust enrichment claim, although without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss Plaintiff's Complaint (Doc. No. 16) will be granted in part and denied in part. As to Count I, the meal-break claim will be dismissed without prejudice. The collective allegations will also be dismissed with respect to non-Tennessee residents. As to Count II, the unjust enrichment claim will be dismissed without prejudice. The other claims will remain pending. An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

29